IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| DANIEL WAYNE CARROLL, § | |
| § | |
| *Plaintiff,* § | |
| § | |
| v. § | Civil Action No.  SA-19-CV-95-XR |
| § | |
| JEFFREY PURVIS, OFFICER FNU § | |
| BOWMAN, CLINT MASSINGIL, § | |
| OFFICER STEPHEN WHERRY, and § | |
| JAIMAN YARBROUGH § | |
| § | |
| *Defendants*. § | |

**ORDER**

On this date, the Court considered the motion to dismiss filed by Defendants Stephen Wherry and Jaiman Yarbrough (docket no. 33), Plaintiff's Motion for Summary Judgment (docket no. 39), and Defendant Clint Massingil's Motion for Summary Judgment (docket no. 43). The Court finds that *Heck v. Humphrey*, 512 U.S. 277 (1994), bars Plaintiff's claims of excessive force. The Court further dismisses Plaintiff's claim for failure to render medical aid.

**Background**

*Pro se* Plaintiff Daniel Wayne Carroll filed this lawsuit on January 31, 2019 against Sheriff Rusty Hierholzer, Jeffrey Purvis, and Officer Bowman of the Kerrville County Sheriff's Department for alleged violations of his civil rights in connection with his arrest in July 2018. Specifically, Plaintiff complained that officers sprayed him with pepper spray after he had already surrendered and was on his hands and knees, not posing a threat or resisting. He complained the pepper spray caused a burning sensation, dizziness, and difficulty breathing, and he was not given medical attention.

Because Plaintiff sought to proceed *in forma pauperis*, Magistrate Judge Farrer screened the initial complaint and ordered service on Defendants. The three named Defendants moved to dismiss, and this Court granted the motion in part, dismissing the claims against Sheriff Heirholzer with prejudice. The Court construed the remaining motion by the arresting officers Purvis and Bowman under *Heck v. Humphrey* as a motion for summary judgment and directed them to provide state records relating to Plaintiff's evading and resisting arrest convictions so the Court could adequately consider whether the *Heck* bar applied. Defendants submitted the records on September 5, 2019. Plaintiff was also directed to show cause why his claim for lack of medical attention should not be dismissed.

The case was then referred to Magistrate Judge Farrer, who ordered Defendants to provide video footage of the arrest. Defendants Purvis and Bowman supplemented their motion with certified copies of Plaintiff's conviction records and body camera and patrol car footage and renewed their motion for summary judgment. Plaintiff was then given leave to amend his complaint to add Investigator Stephen Wherry, Sergeant Jaiman Yarbrough, and Corporal Clint Massingil as defendants. Docket no. 23.

Plaintiff's Amended Complaint was filed on December 21, 2019. Docket no. 28. In the Amended Complaint, Plaintiff alleges that the officers were there to serve a felony arrest warrant, and Plaintiff admits that he ran away and climbed over a fence. Plaintiff alleges that he then became trapped between two fences about three feet apart and as he was running between the fences, Wherry reached through and tried to grab him but he pulled away (which Plaintiff contends forms the basis of his resisting arrest charge and conviction). Plaintiff continued running until the brush got too thick, and turned around to run back. Plaintiff alleges an officer

2

yelled "Stop or I'll shoot" so he stopped running. Plaintiff alleges that, at that time, Yarborough reached through and grabbed him by the shirt collar, and Plaintiff yelled out that he needed cameras on him. Plaintiff alleges that a voice said to lie on the ground but the one holding him (Yarborough) said not to move, and he obeyed Yarborough. Plaintiff alleges that Defendant Massingil then sprayed him at point blank range in the face although he was not resisting or fighting or posing a threat.

Plaintiff alleges that after handcuffing him and moving him out from between the fences, the officers then led him to a water hose, where a small amount of water was splashed on his face, with all officers present, and he was then led to a patrol car. Plaintiff alleges he was having trouble breathing and said so, and also said, "something's wrong."  He alleges that he smacked his head on the partition in frustration, and that he lost consciousness, but he was not taken to the hospital or given medical attention.  Plaintiff sues all five officers for excessive force and failure to render aid.

Defendants Wherry, Yarbrough, and Massingil (all with Kerrville Police Department) were served with the Amended Complaint. Massingil filed an answer, docket no. 32, and asserted that Plaintiff's claims are barred under *Heck v. Humphrey*. Defendants Wherry and Yarbrough moved to dismiss. Docket no. 33. Wherry and Yarbrough contend that they are entitled to dismissal based on qualified immunity and because *Heck v. Humphrey* bars the claims insofar as Plaintiff was convicted for evading and resisting arrest and his current claims are inconsistent with those convictions. Plaintiff has filed a response (docket no. 36), and Defendants a reply (docket no. 37), and thus this motion is ripe for review. Further, Bowan and Purvis previously raised the *Heck* bar via summary judgment and Massingil has raised it in his

answer and a recently filed motion for summary judgment. Plaintiff also asserts that this case is ripe for summary judgment, and has filed a motion asking the Court to review all evidence in this case, including all audio and video footage and parties' statements. Docket no. 39. The Court has done so, and the Court now considers whether *Heck v. Humphrey* bars Plaintiff's claims of excessive force claim as to all Defendants. The Court further considers whether Plaintiff's failure to render medical aid claim should be dismissed.

## Analysis

### A. *Heck v. Humphrey*

It is undisputed that Carroll was convicted of the offense of "resisting arrest search or transport" after pleading nolo contendere. The charge alleged that Carroll did "intentionally and knowingly prevent and obstruct Clint Massingil, a person the defendant knew to be a peace officer, from effecting an arrest, search, or transport of the defendant." Docket no. 7-4. He was also convicted of evading arrest with previous conviction after pleading guilty. *Id.* The indictment alleged that Carroll did "intentionally and knowingly flee from Clint Massingil, a person the defendant knew was a peace officer who was attempting lawfully to arrest or detain the defendant." *Id.*

Under *Heck v. Humphrey*, 512 U.S. 477 (1994), a convicted criminal may not bring a claim under 42 U.S.C. § 1983 if success on that claim would necessarily imply the invalidity of a prior criminal conviction. Thus, a plaintiff who has been convicted of a crime cannot recover damages for an alleged violation of his constitutional rights if that "violation arose from the same facts attendant to the charge for which he was convicted, unless he proves 'that his conviction or sentence has been reversed on direct appeal, expunged by executive order,

declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.'" *Ballard v. Burton*, 444 F.3d 391, 396 (5th Cir. 2006).

Although the *Heck* principle applies to § 1983 excessive force claims, the determination of whether such claims are barred is analytical and fact-intensive, requiring the Court to focus on whether success on the excessive force claim requires negation of an element of the criminal offense or proof of a fact that is inherently inconsistent with one underlying the criminal conviction. "[A] § 1983 claim would not necessarily imply the invalidity of a resisting arrest conviction, and therefore would not be barred by *Heck*, if the factual basis for the conviction is temporally and conceptually distinct from the excessive force claim." *Bush v. Strain*, 513 F.3d 492, 498 (5th Cir. 2008). "Put simply, there is no *Heck* bar if the alleged violation occurs 'after' the cessation of the plaintiff's misconduct that gave rise to his prior conviction." *Aucoin v. Cupil*, 958 F.3d 379 (5th Cir. 2020).

Plaintiff admits he was evading and initially resisting arrest, but argues he was then sprayed after he had stopped and was no longer resisting or posing any threat, and thus there is a factual dispute whether his arrest and conviction for evading and resisting arrest fully dispose of his excessive force claim. Plaintiff cites *Bush v. Strain*, 513 F.3d 492, 498 (5th Cir. 2008), in which the Fifth Circuit considered whether the plaintiff's excessive force claim would impugn the validity of her criminal conviction for resisting arrest. In that case, the plaintiff admitted that she initially resisted, but claimed that after she stopped resisting, the officer forced her face into a window, injuring her jaw and breaking two teeth. The Court held the trial court's grant of summary judgment based on *Heck* was erroneous because the plaintiff presented a chronology

5

of events that "adequately pleaded a claim for excessive force occurring after she was restrained" and consequently her claim was not barred by *Heck*. *Bush*, 513 F.3d at 500.

Defendants contend that *Bush v. Strain* is distinguishable because the Court had an extensive record to consult to determine that the episodes were temporally distinguishable and because fact issues existed as to when the plaintiff ceased resisting and the alleged excessive force was used, and that is not the case here. In *Bush*, the state-court judge issued very narrow fact findings and found the plaintiff guilty of resisting arrest based on the officer's testimony that, as he was attempting to cuff her, she struggled to get free from him to strike another person. The court made no findings regarding how long Bush's resistance lasted or at what point she was injured, and the trial judge actually determined those factors to be irrelevant to its determination that the plaintiff had resisted arrest. Thus, a finding that she had ceased resisting and was then injured by the use of excessive force when the officer pushed her head into a car window would not call into question the validity of her resisting arrest conviction. In addition, there was conflicting testimony on summary judgment about when the plaintiff ceased resisting.

Here, in contrast, we do not have such narrow fact findings from the convicting trial court on the resisting and evading arrest charges. The underlying incident reports filed by the officers indicate that Plaintiff continued evading and resisting arrest until he was sprayed with the pepper spray. Inv. Jeff Purvis, the arresting officer, states in his incident report, "Cpl Massingil had to utilize his OC spray and spray Carroll in the facial area to effect the arrest because Carroll was also resisting arrest. Carroll would not comply to verbal commands. Inv. Wherry and Cpl Massingil advised Carroll had evaded on foot and ran along a fence line where he was cornered. Carroll refused to get on the ground and was sprayed and still would not

comply." Sergeant Jaiman Yarbrough states in his incident report that Carroll was running between the fence lines and Inv. Wherry attempted to reach through and grab him, at which point Carroll began attempting to run the opposite direction, ultimately being cut off by Cpl. Massingil approaching from the opposite angle. Yarbrough then states,

> Carroll then stopped and appeared as though he might jump the fence. I reached through the fence and grabbed Carroll by the shirt collar. Carroll attempted to pull back in an apparent attempt to break my grasp. Corporal Massingil then utilized his department issued OC Spray in order to attempt to subdue Carroll. Corporal Massingil sprayed the OC Spray directly in Carroll's face. Because of Corporal Massingil's angle opposite of me, I let go of Carroll in order to avoid being sprayed by the OC Spray. The OC Spray took effect quickly. Trapped but not detained, Carroll was given strict orders not to move. I then jumped the fence and detained Carroll in double locked handcuffs. While attempting to detail Carroll in double locked handcuffs, he continued to squirm and move his hands. I noted it was effectively preventing me from placing Carroll in handcuffs.

Investigator Wherry's incident report states, "While attempting to place Carroll under arrest, he refused to get on the ground and Deputies deployed O/C spray to Carroll's facial area" and "Carroll then [lay] down on the ground." Further, "When Officers attempted to place Carroll into handcuffs, Carroll would pull his hands away from officers preventing them from placing the handcuffs on him." "After a brief struggle, Sgt. Yarbrough was able to place Carroll into handcuffs."

Deputy Massingil's report states that Carroll "turned around and was now walking back toward me inside the fence line and refused repeated orders to get on the ground given by multiple Officers. I delivered a short burst of department issued pepper spray to the suspect's face and then he got down on the ground after I also threatened to use my department issued taser on him."

Purvis's Affidavit of Probable Cause likewise states the following: "Although officers yelled 'Stop Police,' Carroll did not comply and continued to run and attempt to evade on foot and refused to get on the ground. Cpl. Massingil utilized his assigned OC spray and sprayed Carroll in the facial area for compliance. . . . Carroll then went to his knees. Officers continued to give verbal commands and he would not follow instructions to place his hands behind his back. Sgt. Yarbrough jumped the fence and attempted to handcuff Carroll. Carroll was twisting and turning and being non-compliant. Carroll was finally detained in handcuffs without further incident."

At his trial, Plaintiff pled no contest, and the state court proceeded to hear evidence from the State and Carroll and then found sufficient evidence to support Carroll's plea and find him guilty. But there is no way to determine from the record before the Court exactly what facts the trial court used to convict on the charges. Given that all the officers stated in their reports and likely testified similarly before the trial court that Plaintiff was continuing to evade and resist up to and even after being sprayed with the pepper spray, it is likely the trial court relied at least in part on those facts in rendering the guilty verdicts, as opposed to simply the earlier point in time when an officer attempted to grab Plaintiff through the fence and he pulled away, as Plaintiff contends.

Moreover, the video footage (which Plaintiff asks the Court to consider) confirms that, at the time Plaintiff was sprayed, he was continuing to run or walk along the fence line, turning away from several officers and refusing to comply with commands to get on the ground. In the video showing the officer spray Carroll, Carroll stopped running (and may have been grabbed by the shirt by Yarbrough) almost simultaneously with the use of pepper spray, and then Carroll

went to his knees. Thus, he was sprayed before he was subdued by officers, and he admits he continued to writhe and struggle after being sprayed, though he asserts it was due to the pepper spray and not resisting arrest.[1] Accordingly, there are not two distinct temporal periods between the resisting and the alleged use of excessive force, nor was force used after Plaintiff was on the ground and/or fully restrained, as in *Bush.*

This case is more like *Aucoin*, where the Fifth Circuit found that *Heck* barred the plaintiff's claims for all events that occurred in his cell, even though the plaintiff claimed he was wholly blameless for that use of force, because it would undermine his disciplinary conviction, although it did not bar his claim for an alleged excessive beating at a later point in time at the prison showers and lobby. Plaintiff's arrest is more like the events in the cell in *Aucoin* than the arrest in *Bush.* Similarly, *Bourne v. Gunnels*, 921 F.3d 484 (5th Cir. 2019), is distinguishable because there the plaintiff alleged that unnecessary force was used on him after he was handcuffed and shackled on the floor and not a threat. Again, at the time Carroll was sprayed, he had only just ceased running, and even if an officer had a hand on his shirt, he was not fully restrained or subdued, and the officers testified that he continued resisting arrest.

The Court finds that a favorable verdict on Plaintiff's § 1983 claim of excessive force would necessarily call into question his convictions for evading arrest and resisting arrest. Accordingly, Plaintiff's excessive force claims as to all Defendants are barred by *Heck v. Humphrey*.

---

[1] *Cf. Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017) ("[A] plaintiff's version of the facts should not be accepted for purposes of qualified immunity when it is 'blatantly contradicted' and 'utterly discredited' by video recordings.") (quoting *Scott v. Harris*, 550 U.S. 372, 380–81 (2007)).

**B. Failure to render medical aid**

This Court previously directed Plaintiff to show cause why this claim should not be dismissed because he failed to allege he suffered a serious medical condition requiring medical attention after he was admitted to jail or thereafter or that he was harmed or injured by the lack of medical attention. Carroll states (and Defendants agree) that Defendants used some water to attempt to remove some of the pepper spray before placing him in the patrol car. Massingil corroborates Plaintiff's allegations that he placed Carroll in his patrol car and Carroll began to bang his head on the metal partition that separates the front and back and complained he was not getting any air. Cpl. Massingil states he had his air conditioner turned all the way up and at different points cracked the window to try to get him some relief, and once they arrived at jail, staff almost immediately provided Plaintiff with a shower in an effort to further allow him to decontaminate.

Plaintiff has had an opportunity but has failed to provide any allegation or evidence that Massingil or any of the Defendants was aware of a serious medical condition needing immediate attention beyond the normal effects of being sprayed with pepper spray. Plaintiff has further failed to allege or demonstrate that he was harmed by the failure to provide medical care as Defendants took steps to decontaminate Plaintiff as quickly as possible and he alleges no injury from any delayed steps. Accordingly, this claim is dismissed as to all Defendants.

## Conclusion

Summary judgment is granted as to all Defendants on Plaintiff's excessive force claim on the basis of *Heck v. Humphrey*. Plaintiff's complaint of lack of medical care is dismissed for

failure to state a claim. Accordingly, all Plaintiff's claims are dismissed with prejudice and Plaintiff shall take nothing by his claims.

Defendant Wherry and Yarbrough's motion (docket no. 33) is GRANTED. Plaintiff's motion for partial summary judgment (docket no. 39) is DENIED and the motion to strike Plaintiff's motion (docket no. 40) is DENIED. Defendant Massingil's motion for summary judgment (docket no. 43) is GRANTED.

The Clerk shall enter a Judgment pursuant to Rule 58 that Plaintiff take nothing and shall CLOSE this case.

SIGNED this 1st day of June, 2020.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE